SO ORDERED: June 05, 2006.

_____
Anthony J. Metz III
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GREGORY ARLEN THOMPSON | ) | CASE NO. 06-01031-AJM-13 |
| SUZANNE ANNETTE THOMPSON | ) | |
| | ) | |
| Debtors | ) | |

**ORDER ON UST'S MOTION TO RECONSIDER
ENTRY OF THE ORDER STRIKING THE CASE**

*I. Background*

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), applicable to bankruptcy cases filed on and after October 17, 2005, made significant changes in how, when and to what extent putative debtors could obtain debt relief. Among those changes is the addition of 11 U.S.C. §109(h) which requires individual consumer debtors to either obtain or *attempt* to obtain credit counseling *before* filing their bankruptcy case. More than just another requirement that can be

1

cured post petition, debtors that fail to comply with §109(h) are *ineligible* to be debtors under the Bankruptcy Code.

Here, the Thompsons filed their "barebones" chapter 13 case on the eve of the sheriff's sale of their residence. [1] Nothing in the papers they filed with the Court indicated that they obtained or attempted to obtain their credit counseling pre petition, probably because they did not know such a requirement existed. [2] The day after the case was filed, the Court determined through a review of the Debtors' petition that the Debtors had not complied with §109(h) and therefore were ineligible to be debtors under Title 11 [3]. The Court by written order dated March 16, 2006, struck their petition and ordered their bankruptcy "case" closed. The "case" was closed on March 20, 2006. [4]

The Office of the United States Trustee (the "UST") moved for reconsideration of

---

[1] The "barebones" filing here included only the petition (old, pre-BAPCPA form), the "Notice to Individual Consumer Debtor under §342(b) of the Bankruptcy Code" and the "Certificate of Emergency". Pursuant to local rule in this district, a certificate of emergency is required when the debtor fails to file the schedules and the statement of financial affairs along with the petition. The Debtors' certificate of emergency here stated that "[w]e have received notification that our home is to be auctioned off tomorrow and we don't have time to put together a complete list of creditors and the Chapter 13 Plan together" (sic).

[2] With the adoption of BAPCPA came new bankruptcy forms. The bankruptcy petition was revised from a two page to a three page form. The second page of the new form contains a section that asks the debtor to check whether credit counseling was received pre petition or whether a waiver (deferral) to obtain it post petition will be requested from the bankruptcy court. The Debtors here used the petition form applicable only to pre-BAPCPA cases and therefore, there was no indication on the petition or in any other papers filed by the Debtors that they obtained or attempted to obtain the required credit counseling.

[3] "Title 11" refers to the bankruptcy code which is found at title 11 of the United States Code.

[4] The March 16th Order directed that the "case" be "closed". The use of the word "case" may appear to be inconsistent in light of this opinion which holds, in part, that the filing of a petition by a debtor later determined to be ineligible under §109(h) does not "commence" a "case". The word "case" in the March 16th order was the administrative term used to dispose of the proceeding after the petition had been stricken. Its use in the March 16th order should not be construed to mean that a "case" was commenced pursuant to §§301 and 302.

2

the Court's March 16th Order, arguing for dismissal of the case rather than the striking of the petition.   A hearing on the UST's motion was held on April 21, 2006 wherein Nancy J. Gargula, the United States Trustee, appeared in person.  Also present and arguing the motion was Assistant United States Trustee, Kevin P. Dempsey.   The Court took ruling on the matter under advisement.  This entry constitutes findings and conclusions to the extent required by Fed. R. Bankr. P. 7052.

## II.  Discussion

### A.  Policy Behind §109(h)

While this Court may not agree that the policy behind §109(h) was to "to make certain people ineligible to file bankruptcy" [5] , there can be no doubt that §109(h) makes it more *difficult* to seek and obtain bankruptcy relief.  Sensing a "growing perception that bankruptcy relief may be too readily available and is sometimes used as a first resort, rather than a last resort", Congress' intent behind §109(h) was to require debtors to obtain pre petition credit counseling to "force individuals to obtain education and counseling regarding both the economic consequences of filing for bankruptcy and the non-bankruptcy alternatives available to the debtor to rebuild his or her financial health". *In re Tomco*, 339 B.R. 145 , 152 (Bankr. W. D. Pa. 2006), quoting H.R. Rep. No. 109-31, pt.1 at 2 *reprinted in* 2005 U.S.C.C.A.N. 88, 90-91.  See also, *In re Rios*, 336 B.R. 177,179 (Bankr. S. D. N. Y. 2005) ("[BAPCPA] requires debtors to receive credit counseling before they can be eligible for bankruptcy relief so that they will make an informed choice about bankruptcy, its alternatives, and consequences").

---

[5] *In re Salazar*, 339 B.R. 622, 629 (Bankr. S. D. Tex. 2006).

### B. §109(h) as an Eligibility Requirement

Section 109(h)(1) requires a debtor to receive credit counseling before filing bankruptcy:

> Subject to paragraphs (2) and (3), and notwithstanding any other provision of this section, *an individual may not be a debtor under this title* unless such individual has, during the 180-day period preceding the date of filing of the petition by such individual, received from an approved nonprofit budget and credit counseling agency described in section 111(a) an individual or group briefing (including a briefing conducted by telephone or on the Internet) that outlined the opportunities for available credit counseling and assisted such individual in performing a related budget analysis. (Emphasis added).

In the event the counseling cannot be obtained pre petition, §109(h)(3) provides a "safe harbor" where the debtor may obtain the counseling post petition if "exigent circumstances" merit a waiver and are satisfactory to the court:

> (3)(A) Subject to subparagraph (B), the requirements of paragraph (1) shall not apply with respect to a debtor who submits to the court a certification that –
>
> (i) describes exigent circumstances that merit a waiver [6] of the requirements of paragraph (1);
>
> (ii) states that the debtor requested credit counseling services from an approved nonprofit budget and credit counseling agency, but was unable to obtain the services referred to in paragraph (1) during the 5-day period beginning on the date on which the debtor made that request; and
>
> (iii) is satisfactory to the court.

The consequences of §109(h) noncompliance are far more profound than noncompliance with "routine" filing requirements. By placing the credit counseling

---

[6] Although the statute refers to a "waiver", a debtor that proceeds under §109(h)(3) nevertheless is required to obtain the credit counseling within thirty days, so the requirement to obtain counseling has not been "waived", it's been "deferred". See, *In re Dixon*, 338 B.R. 383, 388, n 4, (B.A.P. 8th Cir. 2006). Compare that to the debtor who, due to incapacity, disability or active military duty in a military combat zone, is exempt from the requirement altogether under §109(h)(4).

requirements under §109 ( the "who can be a debtor" section) rather than §521 ( the "Debtor's duties" section, enumerating the documents required to be filed and the actions required to be taken by the debtor), debtors now have an *immediate eligibility* threshold to cross.  Section 521 gives the debtor additional time after the petition is filed to perform the debtor's duties; §109(h) is less forgiving.  It *requires* the debtor to act *pre petition* (by either obtaining the counseling or *attempting* to obtain it by contacting approved credit counseling providers) and is exacting in how a debtor who does not actually obtain the credit counseling pre petition goes about securing more time to obtain it postpetition.  The failure to comply with §109(h) provides that the debtor *is not eligible* for bankruptcy relief under any chapter.

It is not unusual for a debtor to file a bankruptcy petition on the eve of foreclosure of a residence where the sale is set to occur before the debtor's §109(h) eligibility can be determined.  Foreclosing creditors may be uncertain whether they are stayed from proceeding with the sale or may be unprepared for the repercussions if the sale proceeds as scheduled.  Ineligible debtors may believe they are entitled to the automatic stay, minimally in the interim between the filing of the petition and the determination of eligibility, so as to prevent the sale.  As the UST argues, "substantial uncertainty" may result.

Before BAPCPA, only §§109(a) and (g) imposed an eligibility requirement for those seeking to be a debtor under *any* chapter of the bankruptcy code. [7]  Pre-

---

[7] Section 109(a) provides that "...only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, *may be a debtor under this title*".  Section 109(g) provides "...no individual or family farmer *may be a debtor under this title*, who has been a debtor in a case pending under this title at any time in the preceding 180 days if (1) the case was dismissed by the court for

5

BAPCPA law, especially cases decided under §109(g), may be instructive as to how to treat a petition filed by an ineligible debtor.  However, the legal consequences to a putative debtor who fails to comply with §109(h) take on added significance because BAPCPA added §§ 362(c)(3) and (4) which afford a debtor only limited or no protection under the automatic stay if the debtor has been a debtor in one or more "cases" that were "pending" and "dismissed" within the year preceding the current case. [8]  That means that a "pending but dismissed case" will count as a "strike" against debtors who file a subsequent bankruptcy case within a year, and the scope of the automatic stay in the subsequent case will be limited.  The UST seeks reconsideration of the March 16th order and argues that this case should have been dismissed, not the petition stricken.  The Court here ultimately must determine whether disposing of the petition here by striking it (as opposed to "dismissing the case") was appropriate.  Such a determination will affect any subsequent case filed in a year by the Debtors.

### C.  *"Dismissing a Case" vs. "Striking a Petition"*

Neither §109(h) nor its legislative history explicitly describes how to terminate a case where the debtors have been determined to be ineligible for bankruptcy relief under §109(h).  Prior to the enactment of BAPCPA, it made little difference whether a

---

willful failure of the debtor to abide by orders of the court...or (2) the debtor requested and obtained voluntary dismissal of the case following the filing of a request for relief from the automatic stay...".  Other subsections of §109 address eligibility only as to *specific chapters* of the bankruptcy code.  For example, §§109(b) and (d) address who may be a debtor "under chapter 7 of this title"; §109(c) addresses who may be a debtor "under chapter 9 of this title", §109(e) pertains to eligibility  "under chapter 13 of this title" and §109(f) refers to eligibility "under chapter 12 of this title".

[8] Newly added §362(c)(3) provides a limited 30 day automatic stay if the subsequent case is filed by an individual debtor who was a debtor in a 7, 11 or 13 case that was pending and dismissed within the preceding 1-year period.   If the individual debtor in the subsequent case was a debtor in more than one 7, 11 or 13 case pending and dismissed within the preceding 1 year period, *no* automatic stay is triggered upon the filing of the petition under §362(c)(4).

6

case of an debtor ineligible for relief under other sections of §109 was dismissed or stricken because the termination of the case did not affect a debtor's ability to trigger the full advantages of the automatic stay in a subsequently filed case. Whether a case was "dismissed" or a petition "stricken" was a "difference without a distinction". *In re Salazar*, 339 B.R. 622, 633 (Bankr. S. D. Tex. 2006). Now, with the addition of §§362(c)(3) and (4), a distinction exists.

### 1. *"Commencement" of the "Case"*

The debate whether to dismiss a case or to strike the petition starts with whether the filing of a petition by a debtor ineligible under §109(h) "commences" a "case".

Sections 301 and 302 address the filing of a voluntary petition in both single and joint cases:

> §301. Voluntary Cases.
>
> (a) A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that *may be a debtor* under such chapter.
>
> §302. Joint Cases
>
> (a) A joint case under a chapter of this title is commenced by the filing with the bankruptcy court of a single petition under such chapter by an individual that *may be a debtor* under such chapter and such individual's spouse....

Courts that favor striking hold that a petition filed by an ineligible debtor under §109(h) does not "commence" a case under §§ 301 or 302 because single and joint cases are "commenced" only by the filing of a petition *by an entity that may be a debtor under such chapter*.  If the debtor filing the petition is ineligible to be a debtor under

7

§109(h), then his or her petition does not commence a case because it was not filed by an entity that "may be a debtor". If no case is commenced, there is no case to "dismiss" and "striking" is the appropriate way to conclude the matter. Some courts have held that treating the ineligible debtor's petition in this manner essentially views the filing as a nullity or as void *ab initio*, although this Court does not so hold, as discussed later. *In re Hubbard,* 333 B.R. 377 (Bankr. S. D. Tex. 2005 ); *In re Rios*, 336 B.R. 177 (Bankr. S.D.N.Y. 2005); *Salazar*, 339 B.R. at 633; *In re Hawkins*, 340 B.R. 642, 645 (Bankr. D. Dist. Col. 2006) ("..."a petition filed by an individual who has failed to obtain pre petition credit counseling does not "commence" a title 11 case, which means that there is no case conferring subject matter jurisdiction on the district court or on the bankruptcy court through a referral of jurisdiction pursuant to 28 U.S.C. §157"). [9]

Courts that favor dismissal of the case hold that a "case" is "commenced", even when the petition is filed by an ineligible debtor. *In re Ross,* 338 B.R. 134, 136 (Bankr. N. D. Ga. 2006) ("...the filing of a petition by a debtor ineligible to do so nevertheless commences a bankruptcy case that is neither a 'nullity' nor void *ab initio*. Consequently, upon timely determination that an individual ineligible to be a debtor under §109(h) has filed a petition, the proper remedy is dismissal of the case"); *In re Tomco,* 339 B.R. 145, 159 ("This Court holds that the operative event which triggers the commencement of a bankruptcy case, and this Court's jurisdiction, is the filing of a

---

[9] As to the court's subject matter jurisdiction, the *Hawkins* court further clarified by noting, "[E]very federal court necessarily has the jurisdiction to determine whether it has subject matter jurisdiction over the case or controversy before it" , and noted that the automatic stay was in effect while the court made the threshold determination of jurisdiction. 340 B.R. at 646.

petition"); *In re Seaman,* 340 B.R. 698, 707 (Bankr. E. D. N. Y. 2006) ("Until the court determines that a petitioner is ineligible, a case is commenced by the filing of a petition and cannot be a nullity"); *In re Flores*, 291 B.R. 44, 62 (pre-BAPCPA case considering eligibility under §109(g), holding that "...a petition filed with the bankruptcy court is a petition, and the case thereby commenced is a case, unless and until the bankruptcy court determines that the debtor did not have the right to be a debtor, in which case the court can dismiss the case and fashion such other relief as may be necessary to protect the rights of secured or other creditors").

     Here, my reading of §§301 and 302 leads me to conclude that the "filing of a petition" is not synonymous with "the commencement of a case". The phrase "an entity that may be a debtor under such chapter" or "an individual that may be a debtor under such chapter" qualifies "petition" and that only those petitions filed by those eligible to be debtors "under such chapter" can "commence" a "case". If the debtor filing the petition is not eligible to be a debtor under any chapter of the code, then a petition filed by such debtor is not the type of petition that is sufficient to trigger the "commencement" of the "case" under §§301, 302.

     It follows that, if no "case" is commenced, there is no "case" to "dismiss". The UST argues that "striking a case" is not contemplated by the Code; however, the Court did not strike the "case", it struck the "petition". Striking a petition is not foreign to the rules, for Rule 9011 of the Federal Rules of Bankruptcy Procedure (Fed. R. Bankr. P. 9011) provides for the "striking" of a petition if it is not signed.

     In addition, this Court has interpreted other rules which has led to the "striking" of a complaint rather than the dismissal of a case. Fed. R. Bankr. P. 7003 provides that

9

"[a] civil action is commenced by filing a complaint with the court".  When this Court determines that an attorney not admitted to practice before the courts of this District has filed a complaint to "commence" a civil action, this Court strikes the complaint because the attorney is ineligible to "commence" a case in this District.[10]  Similarly, a "petition" commences a case under §101(42) which provides that a "petition" is a "petition filed under section 301, 302, 303 or 304 [11] of this title, as the case may be, commencing a case under this title".   So, when it has been determined that a debtor who files a bankruptcy petition is ineligible under §109(h) to commence a case under title 11, it would seem that the same principle applies and the petition should be stricken.

### 2.  Is the Automatic Stay Triggered if No "Case" is "Commenced"?

Courts that do not distinguish between the "filing of the petition" and the "commencement of the case" are primarily concerned that no automatic stay arises if no case commences.  Both these courts and courts that find that *no* case is commenced by an ineligible debtor view the "commencement of a case" and the imposition of the automatic stay as inextricably interwoven, so that, the automatic stay arises *only* if first a case has commenced. [12]

---

[10] Rule 83.5(c) of the Local Rules for the United States District Court for the Southern District of Indiana provides, with exceptions that are not relevant here, in part that "[a] person not a member of the bar of this Court shall not be permitted to practice in this Court...".

[11] Although this definition still refers to it, BAPCPA repealed section 304 ( entitled "Cases ancillary to foreign proceedings").

[12] "[w]hen read together, §§109(h), 302 and 362(a) establish that no stay can exist for debtors who fail to obtain the required credit counseling or qualify under an exception.  The syllogism is as follows: Individuals who have not received credit counseling and who do not qualify for a waiver are not eligible to be debtors under §109.  Only eligible individuals may file a petition under §302.  Without the filing of a

This Court does not believe that the "commencement" of the case is the exclusive prerequisite for the imposition of the automatic stay.

Section 362(a) provides:

11 U.S.C. §362.  Automatic Stay

(a) Except as provided in subsection (b) of this section, [13] a petition filed under section 301, 302 or 303 of this title...operates as a stay.

This section does not say that the automatic stay is imposed upon the "commencement of the case"; rather the event triggering the stay is the *filing of a petition* under §§301, 302 and 303.  In turn, §§ 301, 302, and 303 allow for petitions to be filed by ineligible debtors, they just don't allow *cases to be commenced* by petitions filed by ineligible debtors. So, it is possible for the stay to be imposed without a case having been commenced.  The creative author behind this theory succinctly summarized it as follows:

> Section 362 says that "a petition filed under section 301, 302 and 303" operates as a stay.  But 301, 302 and 303 do not actually say that a petition may only be filed by an eligible debtor; rather, what they [say] is that "a case is commenced" by the filing of a petition by an eligible debtor.  Thus, the filing of a petition by an ineligible debtor can trigger the automatic stay under 362 (which refers to the filing of a petition, not the commencement of a case), but that petition will not commence a "case" unless the petitioner is eligible.  So, the stay would be in effect temporarily pending determination of eligibility, but if the debtor is determined not to be eligible, then the petition would be dismissed (or stricken, if you prefer), and would not be regarded as a "previous case" for purposes of 362(c)(3) or (4).

David L. Rosendorf, *You Say Strike It, I Say Dismiss It – What Happens When an*

---

petition under §302, the automatic stay provisions set forth in §362 are not invoked".   *Salazar*, 339 B.R. at 625-26.

[13] Subsection (b) of §362 enumerates the several exceptions to the imposition of the stay.

*Ineligible Debtor Files*, p 9 of 10, (April 18, 2006); http://bapcpa.blogspot.com (Follow "Previous Posts"; then follow "You Say Strike It, I Say Dismiss It" hyperlink).

The imposition of the stay pending determination of eligibility has further support in recent BAPCPA amendments that expanded the acts that are excepted from the automatic stay.  Section 109(g), like §109(h), sets forth eligibility requirements for who may be a debtor "under this title", not just a specific "chapter under this title".  New §362 (b)(21) *excepts* from the automatic stay those acts taken to enforce a mortgage or lien in real estate if the debtor is ineligible to file under §109(g):

(b)The filing of a petition under section 301, 302 or 303 of this title ...does not operate as a stay –

(21) under subsection (a), of any act to enforce any lien against or security interest in real property –

(A) if the debtor is ineligible under section 109(g) to be a debtor in a case under this title...

This new section added by BAPCPA eliminates the operation of the stay as to acts against real estate for debtors ineligible for bankruptcy relief under §109(g).  It is clear that it contemplates that a stay arises upon the filing of a petition by an ineligible §109(g) debtor, otherwise there would have been no reason to except acts against real property from the stay; why create an exception to something that doesn't exist? Congress could have provided for a similar exception from the stay for §109(h) cases but chose not to do so.  The resulting implication is that, like §109(g), petitions filed by ineligible  §109(h) debtors *do* trigger the automatic stay but, unlike §109(g), there is no

statutory carve out that allows secured creditors to proceed against real property. [14]

### D.  The Stay is Triggered Even Though No "Case" Has Been "Commenced"

This Court holds that petitions filed by ineligible §109(h) debtors are *not* void *ab initio,* but in fact trigger the imposition of the automatic stay and the stay remains in place until it is later modified or the proceeding is closed.  By so finding, the "substantial uncertainty" for creditors and debtors alike is minimized.  Given the typically short lapse of time between filing and closing in this district, few acts have the opportunity to transpire so as to cause "substantial uncertainty". [15]  However, a "case" has not "commenced" until it is determined that the debtor filing the petition is eligible for bankruptcy relief under §109(h).  In the event the debtor is determined to be ineligible under §109(h), the petition is stricken; there was no "case" to "dismiss".  And, if there was no "case" to "dismiss", then there could not have been a "pending case".

---

[14] This amendment recognizes the different treatment to be afforded a debtor ineligible under §109(g), who, by definition, is a repeat filer, and a debtor ineligible under §109(h), whose ineligibility was caused by the failure to perform the ministerial act of obtaining credit counseling.  This Court has found that the vast majority of debtors who are ineligible under §109(h) are pro se debtors who are neither serial filers nor aware that they must seek or attempt to seek credit counseling before they file.  Typically, they file before obtaining credit counseling because negotiations with a secured lender have broken down and foreclosure is inevitable.  Contrary to some courts, this court views an impending foreclosure of a residence as an "exigent circumstance" meriting a deferral, despite the debtor's advance knowledge of the foreclosure and the debtor's "eleventh hour" filing.  It is this Court's experience that once a defaulted debtor files a bankruptcy, secured lenders often cease negotiations, refuse to accept payments until formal motions are filed in the case, and place the loan in a different "status".  Perhaps a debtor justifiably waits to file until the "eleventh hour" to continue negotiations and to avoid that fate until all other avenues have been exhausted.  For an interesting read on the evils that befall well meaning but uninformed pro se debtors attempting to ward off bankruptcy, see *In re Tomco*, 339 B.R. 145, 152-53 (Bankr. W. D. Pa. 2006).  Despite its sympathy with the debtor's plight, the court in *Tomco* found that the debtor did not comply with §109(h)(3)(ii) and dismissed her case.

[15] Fortunately, in this district, debtors that are ineligible for relief under §109(h) are weeded out early in the course of the proceedings, oftentimes prior to the issuance of the §341 meeting notice.  As a result, very few events transpire between the time the petition is filed and the time it is stricken.

Nonetheless, striking the petition doesn't render it a nullity; rather, the petition retains its assigned cause number and remains on the Court's records.  The petition merely fails to develop into a full, *pending case, at least for purposes of §§362(c)(3) and (4).*  If the Debtors here file a subsequent petition within a year and meet the §109(h) criteria, the petition filed under this cause number will not count as a "case pending and dismissed " for §§362(c)(3) and (4) purposes. [16]

### III.  Conclusion

This outcome based on this Court's reading of §§109(h), 301, 302, and 362 strikes a satisfactory balance between a creditor's need for certainty in proceeding once a petition is filed and an eligible debtor's ability to refile a subsequent petition without losing the benefits of the automatic stay due to his prior failure to comply with the credit counseling requirement.   Given that this result should allay the stated concerns of the UST, the Court's order of March 16th striking the petition will not be modified.  Nothing in that order suggested that the automatic stay was not in place for the short period between the petition filing and the petition striking.  And, since no "case" was

---

[16]  Some may argue that the Court's decision here allows the serial filer to continue to file petitions, thus invoking the automatic stay, without the consequences of limited or no automatic stay provided for in §§362(c)(3) and (4).  By "striking" the "petition" instead of "dismissing" a "case", this Court is not without a remedy against serial filers and abusive filings.  28 U.S.C. §1334 confers original and exclusive jurisdiction over "all cases under title 11" in the district courts.  In turn, the district court may provide that "any and all cases under title 11 and *any or all proceedings arising under title 11"* shall be referred to the bankruptcy court under 28 U.S.C. §157.  Congress must have contemplated that "cases" and "proceedings" were two different animals, otherwise, the use of the term "proceedings" would be superfluous.  The filing of an ineligible petition that triggers the automatic stay is a "proceeding" over which this Court has jurisdiction under 28 U.S.C. §157.  Thus, this Court, before the petition is stricken and the proceeding is closed, is free to fashion the appropriate relief to prevent abusive filers from gaining the advantages of the automatic stay.  For example, the Court can enter in rem relief under §362(d)(4), in which case the stay would not be invoked in a subsequently filed petition by the debtors under §362(b)(20).  The Court may also lift the stay retroactively and validate any sheriff's sale occurring post petition.  See, *Flores,* 291 B.R. at 63 (foreclosure sale validated by nunc pro tunc dismissal of case filed by debtors ineligible under §109(g)).

14

"commenced", there is no "case" to "dismiss"; consequently, there is no need to modify the "striking" language in the order.

Accordingly the UST's motion is DENIED.

# # #

Distribution:

Nancy J. Gargula, United States Trustee
Kevin P. Dempsey, Asst. United States Trustee
Debtors, pro se
Chapter 13 Trustee